UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:

SUPER BUY FURNITURE, INC.

Debtor

CASE NO.  14-05523(ESL)

CHAPTER 11

JOINT DISCLOSURE STATEMENT

OF

SUPER BUY FURNITURE, INC.

s/CHARLES A. CUPRILL-HERNÁNDEZ
USDC-PR 114312
Charles A. Cuprill, P.S.C. Law Offices
Counsel for Debtor
356 Fortaleza Street -Second Floor
San Juan, PR  00901
Tel.:  787-977-0515
Fax:   787-977-0518
E-Mail:  ccuprill@cuprill.com

s/ JAVIER VILARIÑO-SANTIAGO
USDC-PR 223503
Ferraiouli, LLC
Counsel for the Creditors Committee
Po Box 195168
San Juan, PR 00919-5168
Tel.: 787-766-7000
Fax.: 787-766-7001
E-Mail:  jvilarino@ferraiuoli.com

WILLIAM M. VIDAL-CARVAJAL LAW
OFFICE, PSC
Counsel for Empresas Berríos, Inc. &
Rent Express by Berríos, Inc.
MCS Plaza, Ponce de León Ave.
Suite 801
San Juan, PR 00917
Tel.: 787-764-6867
Fax: 787-399-6415
E-Mail:  william.m.vidal@gmail.com

INDEX

I.     INTRODUCTION ........................................................................................................................... 4

II.    SUMMARY OF THE PLAN ............................................................................................................ 5

III.   INFORMATION ABOUT THE REORGANIZATION PROCESS ............................................... 8

     3.1   *Purpose of a Disclosure Statement* ..................................................................... 8
     3.2   *Voting Procedure* ................................................................................................. 9
     3.3   *Ballots* .................................................................................................................. 10
     3.4   *The Confirmation Hearing* ................................................................................. 10
     3.5   *Acceptances Necessary to Confirm the Plan* .................................................. 11

IV.   GENERAL INFORMATION ....................................................................................................... 12

     4.1   *Description and Historical View of the Debtor.* ............................................... 12
     4.3   *Debtor's Post-Petition Endeavors.* .................................................................. 13

V.    CLAIMS AGAINST DEBTOR ...................................................................................................... 14

     5.1   *Claims Against Debtor* ........................................................................................ 14
     5.2   *Objections to Claims* ........................................................................................... 15

I.     DESCRIPTION OF THE PLAN .................................................................................................. 16

     6.1   *Unclassified Claims* ............................................................................................. 18
     6.2   *Professional Fee Claims* ..................................................................................... 18
     6.3   *Priority Tax Claims and Other Priority Claims* ................................................ 19
     6.4   *Classes of Claims and Equity Interests* ............................................................ 20
     6.5   *Treatment of Claims.* ........................................................................................... 20
     6.6   *Means for Implementation of the Plan* ............................................................. 22
     6.7   *Debtor's Post Confirmation Management* ........................................................ 22
     6.8   *Executory Contracts and Unexpired Leases* ................................................... 22

VII.   LIQUIDATION AND FINANCIAL ANALYSIS ........................................................................ 23

     7.1   *Best Interest of Creditors and Comparison with Chapter 7 Liquidation* ......... 23
     7.2   *Feasibility of the Plan* ......................................................................................... 24
          A)   Financial Projections ..................................................................... 24
             a)   Personal Property ................................................................. 25
             b)   Accounts Receivable and Liquidated Debts .................... 26
             c)   Liquidation Analysis ............................................................ 26
     7.3   *Pending Litigation and Other Liabilities* .......................................................... 26

VIII.  BAR DATE AND DETERMINATION OF CLAIMS ................................................................. 27

     8.1   *Bar Date* ................................................................................................................ 27
     8.2   *Determination of Claims* ..................................................................................... 27

IX.   ALTERNATIVES TO THE PLAN .............................................................................................. 28

          A.   Liquidation Under Chapter 7 ....................................................... 28
          B.   Dismissal of the Case .................................................................... 28
          C.   Alternative Plan of Reorganization ............................................ 29

XI.   CONCLUSION ............................................................................................................................. 29

Super Buy Furniture, Inc.                                                    Case No. 14-05523(ESL)
Joint Disclosure Statement                                                            Page 3

**LIST OF EXHIBITS**

Exhibit A- Ballots.................................................................................................................................9
Exhibit B - Order Approving Disclosure Statement.........................................................................11
Exhibit C- Summary of Claims and Plan Payments..........................................................................15
Exhibit D- Summary of Priority Tax Claims .....................................................................................19
Exhibit E- Projected Cash Flow Statements ...................................................................................22
Exhibit F- Estimated Liquidation Proceeds Distributions...............................................................22
Exhibit G- Liquidation Analysis ......................................................................................................23
Exhibit H- Summary of Monthly Operating Reports ......................................................................24
Exhibit I- Monthly Operating Reports as of September 30, 2014  ..................................................24
Exhibit J - Audited Financial Statements as of March 31, 2013 .....................................................25
Exhibit K – Interim Unaudited Financial Statements as of August 31, 2014..................................25

# I.    INTRODUCTION

Pursuant to Section 1125 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. (the "Bankruptcy Code"), Super Buy Furniture, Inc., debtor and debtor-in-possession in the above captioned case ("Debtor"), the Official Committee of General Unsecured Creditors (the "Committee"), Empresas Berrios, Inc. ("EBI"), into which EBM Centro de Liquidación Caguas, Inc. was merged on September 30, 2014, and Rent Express by Berríos, Inc. ("REI") (Debtor, the Committee, EBI, and REI, collectively known as the "Parties") provide this Joint Disclosure Statement (the "Disclosure Statement") to all of Debtor's known creditors. The purpose of the Disclosure Statement is to provide such information as the Parties believe may be deemed necessary for Debtor's creditors to make an informed decision in exercising their rights to vote on the Parties' Joint Liquidation Plan (the "Plan"), dated as of the date of the Disclosure Statement.  The Plan is being filed with the United States Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court") simultaneously herewith.

The Parties recommend that you vote to accept the Plan.  Each creditor must, however, review the Plan and the Disclosure Statement carefully, including all Exhibits in their entirety, and determine whether or not to accept or reject the Plan based upon that creditor's independent judgment and evaluation.  The description of the Plan in the Disclosure Statement is in summary form and is qualified by reference to the actual terms and conditions of the Plan, which should be reviewed carefully before making a decision to accept or reject the Plan. Capitalized terms not otherwise defined herein have the same meaning as set forth

in the Plan; other terms shall have the meaning ascribed to them in the Bankruptcy Code.

The information contained in the Disclosure Statement has been provided by Debtor based upon Debtor's knowledge of its records, business, and affairs.  Except as otherwise expressly indicated herein, the information provided in the Disclosure Statement has not been subject to an audit or independent review. Although great efforts have been made to be accurate, the Parties and their Counsel, and other professional advisors do not warrant the accuracy of the information contained herein.

The Disclosure Statement has not yet been approved by the Bankruptcy Court as providing information deemed adequate to permit Debtor's creditors to make an informed judgment in exercising their right to vote for or against the Plan.

No representations concerning Debtor, including the value of its assets, or the aggregate dollar amount of claims which may be allowed, are authorized other than as set forth in the Disclosure Statement. Any representations, warranties, or agreements made to secure acceptance or rejection of the Plan by Debtor's creditors that differ from those contained in the Disclosure Statement should not be relied upon in voting on the Plan.

The Parties believe that the Plan provides the quickest recovery and will maximize the return to creditors on their Claims. ACCORDINGLY, THE PARTIES URGE ALL CREDITORS TO VOTE IN FAVOR OF THE PLAN.

## II.    SUMMARY OF THE PLAN

The Plan specifies the manner in which the Claims and the Interests in Debtor are to be treated.  Allowed Administrative Expense Claims and Allowed Priority Tax

Claims are not classified for purposes of voting under the Plan, but the Plan does provide for the treatment of such Claims.  The table below provides a summary of the treatment of those Claims and of the Claims of General Unsecured Creditors as Class 1, as well as Debtor's shareholders' interests in Debtor.  To the extent that the terms of the Disclosure Statement vary from those of the Plan, the terms of the Plan will control.

| DESCRIPTION OF CLAIM | CLASS | ESTIMATED AMOUNT OF ALLOWED CLAIM | TREATMENT AND ESTIMATED RECOVERY UNDER THE PLAN |
|---|---|---|---|
| Holders of Allowed Administrative Expense Claims | N/A | $1,277,319.00 | Unimpaired.<br><br>Estimated Recovery: 100%<br><br>Except as otherwise agreed to by Debtor and the Holder of a pending Allowed Administrative Expense Claim, including pre-petition claims classified under Section 503 (b) (9), estimated in $291,084, as more fully detailed in Exhibit C hereto, each such Holder shall be paid in full by Debtor on the Effective Date. Payments to Professionals will be made as approved by the Bankruptcy Court during the pendency of the Chapter 11 case. US Trustee Quarterly fees will be continued to be paid when due. |
| Holders of Allowed Priority Tax Claims Secured and Unsecured | N/A | $730,884.00 | Unimpaired.<br><br>Estimated Recovery: 100%<br><br>Holders of Allowed Priority Tax Claims, Secured and Unsecured, shall be paid on the Effective Date. |
| Holders of Other Allowed Priority Claims | N/A | $54,372.00 | Unimpaired.<br><br>Estimated Recovery: 100%<br><br>Holders of Other Allowed Priority Claims, (primarily employees' pre- |

| | | (Estimated) | petition claims), shall be paid on the Effective Date. |
|---|---|---|---|
| Holders of Allowed General Unsecured Claims | Class 1 | $28,818,116.29 | Impaired.<br><br>Estimated Recovery: 26%<br><br>Holders of Allowed General Unsecured Claims, including those arising from rejected executory and lease contracts, shall be paid from the proceeds of the sale of Debtor's assets through their orderly liquidation to be overseen by Debtor and the Committee. It is estimated that the liquidation will take from six (6) to nine (9) months, as of December 1, 2014.<br><br>The net proceeds from the liquidation of Debtor's assets, together with the cash in Debtor's debtor-in-possession accounts, will be available for distribution to Creditors.<br><br>Prior to any distribution to General Unsecured Creditors, Debtor shall pay in full, pending Allowed Administrative Expense Claims and Priority Claims, as set forth above.<br><br>An estimated $4,640,000, will be distributed as follows:<br><br>a. The first net $3,000,000 on a pro-rata basis among General Unsecured Creditors holding allowed claims, excluding the claims of EBI and REI, but including claims of landlords for pre-petition rejection damages, claims of employees, and others. This first distribution is expected to produce an estimated dividend of 21% of the Claims of General Unsecured Creditors. It is estimated that the payments of this first distribution to General Unsecured Creditors will be made within 30 days of the Confirmation Order. |

Super Buy Furniture, Inc.                                                    Case No. 14-05523(ESL)
Joint Disclosure Statement                                                              Page 8

|  |  |  |  |
|---|---|---|---|
|  |  |  | b. The additional funds arising from the liquidation of Debtor's assets, estimated in $1,640,000, will be distributed on a pro-rata basis among General Unsecured Creditors, including EBI and REI, for an additional estimated dividend of 6% to General Unsecured Creditors. It is estimated that this additional distribution will be made within 120 days from the Effective Date. |
| Interests in Debtor | Class 2 | N/A | Impaired.<br><br>Estimated Recovery:  N/A<br><br>The Holders of the Equity Interests in Debtor will not receive any distribution under the Plan. Debtor's common shares will be cancelled on the Effective Date, as Debtor's operations will cease after the sale of its assets. |

For a more detailed description of the treatment of the foregoing Claims and Interests, see "Treatment of Claims and Interests under the Plan".

The Disclosure Statement has been prepared by Debtor and the Committee to provide creditors with adequate information so that they can make an informed judgment about the Plan.  Each creditor should read the Disclosure Statement and the Plan in their entirety before voting on the Plan. No solicitation of votes on the Plan may be made except pursuant to the Disclosure Statement and no person has been authorized to utilize any information concerning Debtor's assets other than the information contained herein for purposes of solicitation.

III.   INFORMATION ABOUT THE REORGANIZATION PROCESS

3.1   Purpose of a Disclosure Statement

Super Buy Furniture, Inc.                                                     Case No. 14-05523(ESL)
Joint Disclosure Statement                                                    Page 9

This Disclosure Statement includes background information about Debtor and identifies how creditors have been placed in the Plan. The Disclosure Statement describes the proposed treatment of Debtor's creditors if the Plan is confirmed and contains information concerning the prospects in the event of confirmation or, in the alternative, the prospects if confirmation is denied or the proposed Plan does not become effective.

Upon its approval by the Bankruptcy Court, the Disclosure Statement and the Exhibits thereto will have been found to contain, in accordance with the provisions of the Bankruptcy Code, adequate information of a kind and in sufficient detail to enable a reasonable, hypothetical investor, typical of a holder of an impaired claim or an interest to make an informed judgment about the Plan. Approval of the Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

3.2    Voting Procedure

Creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing, and causing the Ballot Form accompanying this Disclosure Statement as Exhibit A, to be returned to the following address:

SUPER BUY FURNITURE, INC.
c/o Charles A. Cuprill-Hernández, P.S.C., Law Offices
356 Fortaleza Street – Second Floor
San Juan, PR  00901

The Ballots must be received on or before 4:00 P.M. (Eastern Standard Time) on _____, 2015, to be counted in the voting. Ballots received after this time will not be counted in the voting unless the Bankruptcy Court so orders.

The Parties recommend a vote for "ACCEPTANCE" of the Plan.

Super Buy Furniture, Inc.                                          Case No. 14-05523(ESL)
Joint Disclosure Statement                                         Page 10

### 3.3    Ballots

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or equity interests which are "impaired" under the terms and provisions of a plan are entitled to vote to accept or reject such plan, except as provided in Section 1126(g) of the Bankruptcy Code as to any Class which is deemed not to have accepted the Plan because the Plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the Plan on account of such claims or interests.

Members of Class 1 are impaired under the Plan and entitled to vote.  They will be asked to vote for acceptance or rejection of the Plan.

### 3.4    The Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2015 at _____ .M. or as soon thereafter as the parties can be heard. The Confirmation Hearing will be held before the Honorable Enrique S. Lamoutte Inclan, United States Bankruptcy Judge, in the United States Bankruptcy Court, Courtroom 2, 300 Recinto Sur Street, San Juan, Puerto Rico 00901.  At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and in the best interests of holders of claims and interests.   The Bankruptcy Court will also receive and consider a Report of Plan Voting prepared by Debtor, summarizing the votes for acceptance or rejection of the Plan by parties entitled to vote.

The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjourned date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

At the Confirmation Hearing with respect to the Plan, the Bankruptcy Court will (i) determine whether the requisite votes have been obtained for the impaired Class, (ii) hear and determine objections, if any, to the Plan and to the confirmation of the Plan, that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing, filed and served as required by the Bankruptcy Court pursuant to the order approving the Disclosure Statement, a copy of which is attached as Exhibit B hereto.

3.5    Acceptances Necessary to Confirm the Plan

The vote of each holder of the impaired Class is important since at the Confirmation Hearing and as a condition to the confirmation of the Plan, the Bankruptcy Court must determine, among other things, whether the impaired Class has accepted the Plan.  Under Section 1126 of the Bankruptcy Code, the impaired Class will be deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of the impaired Class members who actually cast ballots to accept or reject the Plan, accept the Plan.  Further, unless there is acceptance of the Plan by all members of the impaired Class, the Bankruptcy Court must also determine that under the Plan, such Class members will receive property of a value, as of the Effective Date, that is not less than the amount that such Class members would receive or retain if Debtor were liquidated

under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.  THESE
CALCULATIONS ARE BASED ONLY ON THE CLAIMS AMOUNTS AND NUMBER OF
CREDITORS WHO ACTUALLY VOTE.   ANY BALLOT THAT IS VALIDLY EXECUTED
THAT DOES NOT CLEARLY INDICATE REJECTION OF THE PLAN, SHALL BE DEEMED
TO CONSTITUTE A VOTE FOR ACCEPTANCE OF THE PLAN.   THE VOTE OF EACH
CREDITOR IS IMPORTANT.

## IV.    GENERAL INFORMATION

### 4.1    Description and Historical View of the Debtor.

Debtor was incorporated under the laws of Puerto Rico on October 9, 2012,
and is engaged in the purchase and retail sale of furniture and household electronic
appliances.   On November 15, 2012, Debtor entered into an asset purchase
agreement ("APA") with P.F. Stores, Inc. ("PF") for the acquisition of PF's assets
consisting of twenty-two (22) stores doing business under the Pitusa name and
commenced its operations during December 2012, adding two (2) additional stores.
Currently, Debtor operates twelve (12) stores.   The leases relative to the other
twelve (12) stores were rejected by Debtor (Docket No. 4), as authorized by the
Bankruptcy Court. (Docket No. 89).

### 4.2    Events Preceding Debtor's Chapter 11 Filing

The economic downturn and recession Puerto Rico has been facing during the
last years has adversely impacted numerous sectors of the Puerto Rico economy,
including the retail sale of furniture and electronic appliances.   This coupled with an
mistaken expectancy of the results of the purchase from PF and the condition of the
purchased inventory under the APA, caused in difficulties to Debtor in meeting its
obligations in the ordinary course of its business.   Debtor's actual sales and gross
profit margins have been lower than projected on the acquisition date, thus affecting

Super Buy Furniture, Inc.                                   Case No. 14-05523(ESL)
Joint Disclosure Statement                                                  Page 13

Debtor's cash flows, necessary to comply with Debtor's obligations.

Consequently, for the purpose of reorganizing its business and financial affairs, obtain the benefits of the automatic stay provisions of Section 362(a) of the Bankruptcy Code and a breathing spell from the actions which were causing Debtor and its managerial team to defensively operate, on July 3, 2014, Debtor filed a voluntary petition for relief pursuant to 11 U.S.C. Chapter 11 with the Bankruptcy Court.

4.3   Debtor's Post-Petition Endeavors.

As a result of the filing by Debtor of its Chapter 11 petition, Debtor received the benefits of 11 U.S.C. § 362(a), which stays all collection actions and judicial proceedings against Debtor, thus preventing a run to the court house by creditors and the possible execution of its assets, providing Debtor the opportunity to file a Liquidation Plan and a Disclosure Statement, without the pressures that drove Debtor into Chapter 11, as envisioned by the Bankruptcy Code.

The United States Trustee held the first meeting of creditors pursuant to Section 341 of the Bankruptcy Code in Debtor's case on August 8, 2014. The Section 341 meeting was continued and closed on August 26, 2014.

During the course of its case, Debtor has undertaken the following efforts for the benefit of its Estate and its creditors:

Debtor sought and obtained the Bankruptcy Court's approval to retain Charles A. Cuprill, PSC Law Offices, as its bankruptcy counsel.

Debtor also sought and obtained the Bankruptcy Court's approval to retain Luis R. Carrasquillo, CPA ("Carrasquillo") as its financial advisor on all matters pertaining to Debtor's Chapter 11 case.

On July 29, 2014, the United States Trustee appointed the Official Creditors Committee, consisting of the following creditors: BB Bedding d/b/a Bassett Bedding, P.F. Stores, Inc., Arco Publicidad, Corp., Holland House, Jackeline Montero Berroa, Flair Enterprises, Inc., and Whirlpool Corporation.  On November 5, 2014, the United States Trustee recomposed the Creditors Committee by eliminating Whirlpool Corporation and Jackeline Montero Berroa therefrom.

- On August 14, 2014, Debtor filed an application for the appointment of Fiddler González & Rodríguez, PSC ("FGR") as its special counsel in labor law matters, which was approved by the Court on September 3, 2014.

- On September 2, 2014, the Committee filed an application for the appointment of Javier Vilariño Santiago ("JVS") and Ferraiuoli, LLC ("FLLC") to act as the Committee's counsel.

- On October 24, 2014, Debtor filed an application for the appointment of Irizarry, Rodríguez & Co, PSC ("IRC") to assist Debtor in the preparation of its audited financial statements, tax returns and taking of inventory, which was granted by this Court on November 11, 2014.

V.      CLAIMS AGAINST DEBTOR

## 5.1   Claims Against Debtor

Claims against Debtor that are Allowed Claims, as defined in the Plan, will be entitled to Distribution pursuant thereto, as indicated in pages 6 to 8 hereof.

The Plan provides that only Holders of Allowed Claims, that is, holders of Claims not in dispute, not contingent, liquidated in amount and not subject to objection or estimation are entitled to receive distribution thereunder.  Until a claim

Super Buy Furniture, Inc.                                     Case No. 14-05523(ESL)
Joint Disclosure Statement                                                Page 15

becomes an Allowed Claim, distribution will not be made to the holder of such claim.

5.2    Objections to Claims

The amounts set forth as due to holders of unclassified and classified claims are estimates, based upon Debtor's Schedules or Debtor's belief as to the amounts due thereto.  Debtor is including as Exhibit C hereto a Summary of Claims and Plan Payments.

Any objections to Claims must be filed and served on their holders by the Claims Objection Bar Date, which as set forth in the Plan is thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of Debtor's Plan.  If an objection has not been filed to a Claim by the Claims Objection Bar Date, the Claim will be treated as an Allowed Claim.

Objections to Claims filed in Debtor's Chapter 11 case are to be prosecuted by Debtor, including any application to estimate or disallow Claims for voting purposes.

Debtor has filed objections to the following claims, giving notice to the particular creditors that they had thirty (30) days to respond thereto:

| POC # | Claimant | Total Amount Claimed | Amount Expected to be Allowed | Reason for Objection | Action by the Court |
|---|---|---|---|---|---|
| 2 | Ranger American Armored Services, Inc. | $ 39,946.00 Unsecured | $29,535.80 Unsecured | Claim was objected since it included Invoice No. RC000082718 for $10,411.10, which was already paid by Debtor.  Evidence of payment was included with the objection. | Pending |

Super Buy Furniture, Inc.                                           Case No. 14-05523(ESL)
Joint Disclosure Statement                                          Page 16

| 8 | Internal Revenue Services ("IRS") | $12,043.05 Priority Claim | $0.00 | Claim was objected since the Employer's Quarterly Federal Tax Return 941-PR for the quarter ended June 30, 2014 was timely filed on July 30, 2014, with payments thereon totaling $167,966.88, thus no liability existed for such quarter. The IRS withdrew its claim as a result of the objection (Claim was amended to $0.00). | Amended by Claimant |
| 38 | TGM, Inc. | $45,870.00 Unsecured | $0.00 Unsecured | Claim was objected as was duplicative Proof of Claim No. 1. | Pending |

I.    DESCRIPTION OF THE PLAN

The following is a summary of the significant provisions of the Plan and is qualified in its entirety by said provisions.  In the event and to the extent that the description of the Plan contained in the Disclosure Statement is inconsistent with any provisions of the Plan, the provisions of the Plan shall control and take precedence.  All creditors are urged to carefully read the Plan.

The Plan contemplates the orderly liquidation of Debtor's assets through their sale in an organized manner overseen by Debtor and the Committee.  To that effect, the Committee will be represented by its Chairman, Mr. Robert Kimbrell, who will be included in the decision making process in the orderly liquidation. It is estimated that the liquidation will take from six (6) to nine (9) months, as of December 1, 2014.  Discounts for the sale of Debtor's assets will be agreed to by the Parties and will depend on the demand by customers.  The Debtor and the Committee representative will confer to decide which stores and locations may be closed during the liquidation process to minimize operating expenses, increase

recoverability and transfer inventory. Any purchase of additional inventory to attract buyers will also be consulted with Mr. Kimbrell. Although great efforts will be made, Debtor, its management and the Committee cannot assure the net results of the liquidation as it may be affected by external factors beyond their reasonable control.

The net proceeds from the liquidation of Debtor's assets, together with the cash in Debtor's debtor-in-possession accounts, will be available for distribution to creditors. Prior to any distribution to General Unsecured Creditors, Debtor will pay in full, on the Effective Date, pending Allowed Administrative Expense Claims and Priority Claims.

After such payments, the net proceeds from the sale of Debtor's assets, an estimated $4,640,000, will be distributed as follows:

1. The first $3,000,000 arising from the liquidation proceeds, after the payments to the Holders of Administrative Expense Claims and Priority Claims, will be distributed on a pro-rata basis among General Unsecured Creditors holding allowed claims, excluding the claims of EBI and REI, but including claims of landlords, with any rejection damages, pre-petition unsecured claims of employees, and others. This first distribution is expected to produce an estimated dividend of 21% of their Claims of General Unsecured Creditors. It is estimated that this first distribution to General Unsecured Creditors will be made within thirty (30) days of the Confirmation Order.

2. The additional funds arising from the liquidation, estimated in $1,640,000, will be distributed on a pro-rata basis among General

Unsecured Creditors, including EBI and REI, for an additional estimated dividend of 6% to General Unsecured Creditors. It is estimated that this additional distribution will be made within 120 days from the Effective Date.

## 6.1   Unclassified Claims

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Claims are not classified in the Plan.  A description of the unclassified Claims and the Claims of General Unsecured Creditors, as well as the estimated principal amounts thereof, as of the Effective Date, and their treatment, are set forth in the Plan and summarized in pages 6 to 8 hereof.

Administrative Expense Claims are generally the ordinary and necessary costs of administering and operating during a Chapter 11 case, including claims under section 503(b)(9) of the Bankruptcy Code.  These claims are listed in Exhibit C hereto.

Except as otherwise agreed to by Debtor and the holder of a pending Allowed Administrative Expense Claim, including Claims under Section 503 (b)(9), each such holder shall be paid in full on the Effective Date.

If Debtor disputes any portion of an Administrative Expense Claim, Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.  Debtor will reserve the necessary funds to meet these payments.

## 6.2   Professional Fee Claims

The professionals retained by Debtor and the Committee in Debtor's Chapter 11 case have and will incur fees and expenses from the date of their retention through the Effective Date of the Plan.  It is impossible to predict the amount of professional administrative expense fees that will be incurred through the confirmation of the Plan.  As of the filing of this Disclosure Statement, Debtor has paid approximately $73,000.00 in fees and expenses to its professionals, including the retainers. Debtor estimates that additional Allowed Professionals Fee Claims will aggregate from $275,000.00 to $350,000.00 for services rendered and expenses incurred up to the Confirmation of the Plan, including all professionals retained by Debtor and the Committee. All amounts paid to professionals through the Confirmation Date, including interim fees and expenses are subject to final Bankruptcy Court approval.  Debtor reserves the right to contest the allowance of any professional fees.  Payments to Professionals will be made as approved by the Bankruptcy Court during the pendency of the Chapter 11 case.   US Trustee Quarterly fees will be continued to be paid when due.

6.3   Priority Tax Claims and Other Priority Claims

Priority Tax Claims consists of Claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.  Such Priority Tax Claims consist principally of Municipal Taxes, Sales and Use Taxes (IVU), and Personal Property Taxes.

The estimated Priority Tax Claims for $730,884.10, are listed in Exhibit D hereto.

The Holders of Allowed Priority Tax Claims, Secured and Unsecured, shall be paid by Debtor in full, on the Effective Date.

Other Priority Claims, mostly consisting of pre-petition vacations accrued within 180 days prior to the filing date due to Debtor's employees estimated in $54,732.00, will also be paid on the Effective Date.

## 6.4   Classes of Claims and Equity Interests

As of the Petition Date, Debtor had priority unsecured and non-priority unsecured debts, as more particularly described below and in pages 6-8 hereof. The Plan classifies the Claims of General Unsecured Creditors as Class 1.   A description of said Class and Class 2, Holders of the Equity Interests in Debtor and their treatment are set forth below, as follows:

Class 1 – Consists of the Holders of Allowed General Unsecured Claims.

Class 2 – Consists of the Holders of the shares in Debtor.

## 6.5   Treatment of Claims.

Class 1 –Holders of Allowed General Unsecured Claims

(a) Impairment and Voting - Class 1 is impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

(b) Distribution –Holders of Allowed General Unsecured Claims, including those arising from rejected executory contracts, shall be paid as follows:

Pursuant to the agreement of the Parties, Debtor will proceed with the orderly sale of its assets through a liquidation process.  It is estimated that the liquidation will take from six (6) to nine (9) months, as of December 1, 2014.  The net proceeds from the liquidation of Debtor's assets, together with the cash in Debtor's debtor-in-possession accounts, will be available for distribution to Creditors.

Prior to any distribution to General Unsecured Creditors, Debtor will pay in full, pending Allowed Administrative Expense Claims and Priority Claims, as set forth above.

The remaining funds, estimated in $4,640,000, will be distributed as follows:

1.  The first $3,000,000 arising from the liquidation proceeds, after the payments to the Holders of Administrative Expense Claims and Priority Claims, will be distributed on a pro-rata basis among General Unsecured Creditors holding allowed claims, excluding the claims of EBI and REI, but including claims of landlords, with any rejection damages, pre-petition unsecured claims of employees, and others. This first distribution is expected to produce an estimated dividend of 21% of their Claims of General Unsecured Creditors. It is estimated that this first distribution to General Unsecured Creditors will be made within thirty (30) days of the Confirmation Order.

2.  The additional funds arising from the liquidation, estimated in $1,640,000, will be distributed on a pro-rata basis among General Unsecured Creditors, including EBI and REI, for an additional estimated dividend of 6% to General Unsecured Creditors. It is estimated that this additional distribution will be made within 120 days from the Effective Date.

Class 2 – Interests Holders in Debtor

(a)  Impairment and Voting - Class 2 is impaired under the Plan, is deemed not to have accepted the Plan due to the treatment indicated below, as provided for in Section 1126 )g) of the Bankruptcy Code.

(b)  Distribution – The Holders of the Equity Interests in Debtor will not receive any distributions under the Plan. Debtor's common shares will be cancelled within

Super Buy Furniture, Inc.                                    Case No. 14-05523(ESL)
Joint Disclosure Statement                                                Page 22

120 days from the Effective Date, as Debtor's operations will cease after the sale of

its assets.

## 6.6    Means for Implementation of the Plan

Except as otherwise provided in the Plan, Debtor will effect payments of

pending Administrative Expense Claims, on or before the Effective Date. Priority

Tax Claims and Other Priority Claims will be paid on the Effective Date.

All Allowed Claims will be paid with available funds arising from the sale of

Debtor's assets available cash balance, and the collection of Debtor's accounts

receivable.  Debtor's Wind-Down Cash Flows Projections and distribution of funds

are included as Exhibits E and F hereto.

## 6.7    Debtor's Post Confirmation Management

Since Debtor operations will cease after the liquidation of substantially all of

Debtor's assets, Debtor will not have a need for any management thereafter.

Nevertheless until such a time Debtor's current management and their

compensation will continue as follows:

| Mr. Carlos Noel Berríos Casillas | President | No Compensation |
|---|---|---|
| Janice Berríos Casillas, CPA | Treasurer | No Compensation |
| Mr. Héctor Berríos Casillas | VP of Operations | $2,200.00  weekly salary, plus reimbursement of expenses |
| Juan Vega Mercado, CPA | Controller and Operations Manager | $1,538.40  weekly salary, plus reimbursement of expenses |

## 6.8    Executory Contracts and Unexpired Leases

All executory contracts and unexpired leases which have not expired by their

own terms or have been rejected on or prior to the Confirmation Date shall be

deemed rejected on the Effective Date and the entry of the Confirmation Order by

Super Buy Furniture, Inc.                                          Case No. 14-05523(ESL)
Joint Disclosure Statement                                         Page 23

the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

If the rejection of such executory contracts or unexpired leases results in a claim for damages by the other party or parties to such contracts or leases, any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and will not be enforceable against the Estate, or its properties, its agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor and the Committee on or before forty-five (45) days following the Confirmation Date. Debtor retains the right to further object to any rejection damages claims filed in accordance with this Section.

## VII.   LIQUIDATION AND FINANCIAL ANALYSIS

7.1   Best Interest of Creditors and Comparison with Chapter 7 Liquidation

In the event Debtor's Chapter 11 case is converted to Chapter 7 of the Bankruptcy Code, Debtor would be required to cease all activities, its 218 employees could be immediately dismissed, and a Chapter 7 Trustee would be appointed for Debtor's Estate to liquidate the Estate's assets pursuant to the provisions of the Bankruptcy Code, after attending to the immediate issues of securing Debtor's assets and the resolution of any issues involving Debtor's employees.

A Liquidation Analysis with respect to Debtor's assets as of September 30, 2014 is attached as EXHIBIT G hereto (the "Liquidation Analysis").

The Liquidation Analysis reveals that in the event of a liquidation of Debtor's assets by a Chapter 7 Trustee, there would be a substantial loss to Debtor's Estate, taking into account the Chapter 7 costs of administration, the

Super Buy Furniture, Inc.                                    Case No. 14-05523(ESL)
Joint Disclosure Statement                                                Page 24

decrease in the recovery from the liquidation of Debtor's inventories and the expected value of the Estate's assets in a Chapter 7 scenario. It also reflects what in Chapter 11 the respective Creditors are expected to receive under the Plan versus what is projected they would receive in Chapter 7, underscoring the benefits of the confirmation of the Plan and its effectiveness. Pursuant to such analysis, under a Chapter 7 scenario, General Unsecured Creditors would receive between 5.6% and 9.5% of their allowed claims.

Confirmation of the Plan will ensure that holders of Administrative Expense Claims, Allowed Priority Claims, and Allowed General Unsecured Claims will receive prompt dividends on their claims, as set forth above. Under the Plan it is estimated that General Unsecured Creditors will receive 26% of their allowed Claims, while EBI and REI will receive 6% of their Allowed Claims.

The Liquidation Analysis contains estimates and assumptions that, although developed and considered reasonable by Debtor, are inherently subject to significant economic uncertainties and contingencies beyond Debtor's control.

7.2    Feasibility of the Plan

 A)    Financial Projections

Debtor, with the assistance of its Court appointed financial consultant, has prepared financial projections (the "Projections") of the wind-down ("Orderly Liquidation") liquidation process based on the confirmation and implementation of the Plan, and the distribution of the funds resulting from the Orderly Liquidation. The Projections are based upon estimates and assumptions that, although developed and considered reasonable by Debtor are inherently subject to significant economic uncertainties and contingencies beyond Debtor's control, as well as to

Super Buy Furniture, Inc.                                                Case No. 14-05523(ESL)
Joint Disclosure Statement                                               Page 25

certain assumptions as to the value of Debtor's assets that are subject to change. Accordingly, there can be no assurance that the projected performance reflected in the Projections will be realized.

The Projections are attached as Exhibit E to this Disclosure Statement. As Exhibit H hereto, Debtor is including a summary of its monthly operating reports for the period from July 2014 to September 2014. Exhibit I hereto shows Debtor's latest Operating Report filed with the Bankruptcy Court, as of September 30, 2014.

As of the Petition Date, Debtor owned assets and had liabilities, as more particularly described in its Schedules and Statement of Financial Affairs, filed with the Bankruptcy Court on July 3, 2014. As aforesaid, Debtor has prepared and filed with the Bankruptcy Court monthly operating reports summarizing its post-petition financial performance. These monthly operating reports and Debtor's Schedules and Statement of Financial Affairs are available for public inspection at the office of the Clerk of the Bankruptcy Court during regular business hours.

a) Personal Property

As of the Petition Date, Debtor's Schedules listed Debtor's personal property consisting of cash, bank accounts, deposits, accounts receivable, vehicles, office equipment, machinery, inventory, among others, with an aggregate value of $18,209,692.02. A Detail of Debtor's personal property is included in its Schedule B, available for public inspection at the office of the Clerk of the Bankruptcy Court during regular business hours.

b) Accounts Receivable and Liquidated Debts

As of the filing date, Debtor listed, in its Schedule B, accounts receivable with an estimated balance of $516,566.54.  An updated recoverability analysis of Debtor's accounts receivable appears in the Liquidation Analysis.

c) Liquidation Analysis

In order to analyze realistic liquidation scenarios and considering the updated value of Debtor's assets as of September 30, 2014, Debtor has included the Liquidation Analysis as Exhibit G hereto.  Exhibit J hereto, consists of Debtor's Audited Financial Statements as of March 31, 2013 and Exhibit K hereto of Debtor's Interim Financial Statements as of August 31, 2014.

7.3    Pending Litigation and Other Liabilities

At the time of the filing of the Chapter 11 petition, the following cases were pending and were stayed by the provisions of Section 362(a) of the Bankruptcy Code:

| Case/ Name | Nature | Forum | Status |
|---|---|---|---|
| Miguel García Álvarez vs. Casa Pitusa; Sr. Noel Berrios, Presidente; Sr. Luis Tito Pérez Pacheco, Supervisor; Sra. María Montalvo Colón, Gerente de Recursos Humanos<br><br>Civil No. KDP2014-0073 | Labor Claim Unjustified Dismissal and Other Damages | Court of First Instance of Puerto Rico Carolina Section | Stayed |
| Jackeline Montero Berroa vs. Super Buy Furniture, Inc., H/N/C Casa Pitusa: Muebles y Enseres; Aseguradora "X"; Personas de la "A" a la "Z"<br><br>Civil No. JPE2014-0246 | Labor Claim Unjustified Dismissal and Other Damages | Court of First Instance of Puerto Rico Ponce Section | Stayed |

## VIII. BAR DATE AND DETERMINATION OF CLAIMS

### 8.1   Bar Date

On July 8, 2014, in the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" issued in Debtor's case, the Bankruptcy Court fixed November 6, 2014, as the bar date for the filing of proofs of claims and interests (except for Governmental Units), and January 4, 2015, for such filings by Governmental Units.

### 8.2   Determination of Claims

The Plan specifies procedures for objecting to claims.  Debtor may object to Claims within thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan.  No payments will be made under the Plan on account of Disputed Claims until their allowance by the Bankruptcy Court.  The Plan provides that Distributions on Disputed Claims will be held in reserve until the Disputed Claims are allowed (at which time the reserves will be distributed and the Claims will be treated according to the terms of the Plan), or disallowed (at which time the reserves will be distributed on account of Allowed Claims pursuant to the terms of the Plan).

Any Claims which (a) are not listed as an Allowed Claims on Debtor's Schedules, as amended; (b) are not evidenced by a valid, timely filed Proof of Claim; or (c) are not listed in the Plan or exhibits to the Plan as Allowed Claims, shall not receive any distribution of cash or property under the Plan until the same become Allowed Claims, and shall be disallowed and discharged if they are not Allowed by Order of the Bankruptcy Court.

## IX.    ALTERNATIVES TO THE PLAN

If the Plan is not confirmed and consummated, the alternatives include (a) Debtor's liquidation under Chapter 7 of the Bankruptcy Code, (b) dismissal of Debtor's Chapter 11 Case, or (c) the proposal of an alternative plan.

### A.    Liquidation Under Chapter 7

If the Plan cannot be confirmed, the Case may be converted to Chapter 7 of the Bankruptcy Code. In such an event, a trustee would be elected or appointed to liquidate Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.

As set forth in the Liquidation Analysis attached as Exhibit F hereto, Debtor believes that conversion of the Case to Chapter 7 of the Bankruptcy Code would result in a limited distribution to creditors, due to the decreased value of Debtor's assets, the unfamiliarity of a trustee with Debtor's business and the manner of most effectively disposing of Debtor's assets, the carrying costs of certain assets such as Debtor's inventories, and the delay in distribution on account of such conversion.

Thus, Debtor believes that the interest of creditors and the goals of Chapter 11 are better served by the confirmation of the Plan.

### B.    Dismissal of the Case

Dismissal of the Case would likely create substantial problems for all parties involved, including a run to the courthouse, which would result, in an abandonment of the orderly and structured equitable payments provided by the Plan.  Therefore, dismissal of the Case is not a viable alternative for creditors.

Super Buy Furniture, Inc.                                                    Case No. 14-05523(ESL)
*Joint Disclosure Statement*                                                              Page 29

### C.    Alternative Plan of Reorganization

If the Plan is not confirmed, at present, Debtor does not foresee a different plan.  Debtor believes that the Plan will provide the greatest and most expeditious return to creditors.

## X.    TAX EFFECTS

Based on Debtor's net operating carry loss forwards, the provisions of the Puerto Rico Internal Revenue Code of 2011, as amended, and the tax provisions of the Bankruptcy Code, Debtor expects that the implementation of the Plan will not have any tax effects.

## XI.    CONCLUSION

The Parties submit that the Plan is fair and reasonable and in the best interest of the Estate and Creditors and offers the best possible recovery for Creditors under the circumstances.  The Parties therefore urge creditors to vote in favor of the Plan.

San Juan, Puerto Rico this 23rd day of December, 2014.

**EMPRESAS BERRÍOS, INC.**          **RENT EXPRESS BY BERRÍOS, INC.**
PO BOX 674                                      PO BOX 960
Cidra, Puerto Rico  00739                Cidra, Puerto Rico  00739



**Florencio Berríos**                          **Florencio Berríos**
**President**                                      **President**

Super Buy Furniture, Inc.                                          Case No. 14-05523(ESL)
*Joint Disclosure Statement*                                                  Page 30

**EMB CENTRO DE LIQUIDACIÓN
CAGUAS, INC.**
PO BOX 674
Cidra, Puerto Rico  00739

_____
**Florencio Berríos**
**President**

**SUPER BUY FURNITURE, INC.**
PO BOX 674
Cidra, Puerto Rico  00739

_____
**Carlos N. Berríos Casillas**
**President**

**UNSECURED CREDITORS
COMMITTEE**

*s/ Javier Vilarino Santiago*
*Javier Vilarino Santiago*